LEWIS M. WILSON ET AL. v. JOHN W. WILSON ET AL.

[52 South. 353.]

LANDS. *Description. Wills.*

A description of land in a will as the "N. E. ½" of a section is unknown to governmental subdivisions, as well as popular understanding, and is void.

FROM the circuit court of Madison county.

HON. WILEY H. POTTER, Judge.

Lewis M. Wilson and others, appellants, were plaintiffs in the court below; John W. Wilson and others, appellees, were defendants there. The suit was an action of ejectment for the "N. E. ¼" of Section 26, Township 9, Range 1 East, situated in Madison county, Mississippi. The land sued for, with a large body of other land was owned by one J. A. Wilson in his lifetime, but he did not own the "N. W. ¼" of said section. The owner, J. G. Wilson died leaving a will by which he devised to defendants, appellees, the "N. E. ½" of said section 26. From a judgment for defendants plaintiffs, heirs of J. G. Wilson, deceased, appealed to the supreme court. The only question presented by the record was whether the devise of the "N. E. ½" of the section conveyed the "N. E. ¼" thereof.

*W. H. & Robert H. Powell* and *Mayes & Longstreet,* for appellants.

The description in the will, "N. E. ½ of section 26, etc.," is utterly void. Had the land intended to be devised been further and accurately described by metes and bounds the defective description would not have been aided, but would have been rendered immaterial, but no further description is given. *Camp-*

*bell v. Carruth* (Fla.), 13 South. 432; *Simmons v. Hutchinson,* 81 Miss. 351, 33 South. 21; *Schlottman v. Hoffman,* 73 Miss. 198; *Elliott v. Topp,* 63 Miss. 138; *Goode v. Goode,* 66 Am. Dec. 630; *Bingel v. Volz,* 34 Am. St. Rep. 64; *Love v. Buchannan,* 40 Miss. 758; 25 Am. & Eng. Ency. of Law (2d ed.) 177; *Pry v. Pry,* 109 Ill. 466, is exactly in point.

The description "N. E. ½ of section 26" can not be laid off thus

any more than thus

or thus

and so on indefinitely. The description is unknown to governmental subdivisions and does violence to popular understanding.

There is no question presented by this record touching the law of reformation because, first, the suit was an ejectment at law, and, second, a will cannot be reformed.

*H. B. Greaves,* for appellee.

It is an axiom that the whole includes all its parts; and it is perfectly manifest that to lay off a section in two equal parts a line must or should be drawn through the center of the section. The mind grasps this proposition irresistibly. The very suggestion that a square be divided in two equal parts carries with it the idea of drawing a line through the center of the square. If the halves are to be N ½ and S ½ then the mind grasps the idea of a line drawn through the center and running east and west. If we are to divide the square into halves so that we have E. ½ and W. ½ the idea immediately presents itself that the line must be drawn north and south through the center; and again, to divide this same section into N. E. ½ and S. W. ½ the mind turns irresistibly to the idea of drawing a line through the center of the section from south east corner diagonally through the center of the section to the northwest corner as shown in figure one of appellant's brief.

Again, when we say N. E. ½ of a square, it is absolutely manifest to the mind that the land to be conveyed by this description lies in a triangle, the apex or point of which is the northeast corner of the square; and this is irresistible. There is no other conclusion which suggests itself to the mind. This point being the right angle immediately opposite the hypotenuse is the center, bound to be, and the north and east lines are bound to be the two lines drawn at right angles to each other and the hypotenuse must be a line drawn sufficiently far to divide the section in halves, passing through the center of the section with the point or right angle immediate half way. This seems to be a *pons asinorum* for appellants.

*Simmons v. Hutchinson,* cited by appellants, has not the most remote bearing on this case and is not even persuasive.

There it does not undertake to say which half is conveyed, whether it is the N. ½, the S. ½, the N. E. ½ or the S. E. ½.

Argued orally by *Edward Mayes,* for appellant.

WHITFIELD, C. J., delivered the opinion of the court.

The description of N. E. ½ of a section is unknown to surveying and to governmental subdivisions of land, and has been held in *Pry v. Pry,* 109 Ill. 466, to be an absolutely void description. We think this decision is sound. The theory of the appellees is that the N. E. ½ of a section might be laid off by beginning at the southeast corner and running a straight line diagonally through the center of the section to the northwest corner; but it is obvious that a line so drawn would include a part of the N. W. ¼ and a part of the S. E. ¼, neither of which could by any possibility be brought within the description of the N. E. ½ of a section. The N. E. ½ of a section necessarily imports that there should be nothing embraced in that description south of an east and west line through the center of a section, and nothing west of a north and south line through the center of a section. The very terms, N. E. ½, so import.

We are therefore of the opinion that this description, N. E. ½ of a section, is an absolutely void description, and that for this reason the judgment should be, and it is, hereby *reversed,* and the cause *remanded.*

After the delivery of the foregoing opinion counsel for appellees presented an elaborate suggestion of error.

ANDERSON, J., delivered the following response to the suggestion of error.

The "N. E. ½" of a section is unknown to the popular un-

derstanding as well as the government surveying. It is a void description in either sense. The contention that the "N. E. ½" of a section is all that part inclosed by a line running from the southeast to the northwest corner, thence east to the northeast corner, and south to the southeast corner of the section, is unsound. If that description would be the "N. E. ½," the question is, Northeast from where? How can a piece of land be said to be northeast, unless it lies north of an east and west line, and east of a north and south intersecting line? In describing land, either in the popular sense, or according to surveying terms, the viewpoint or basis for directions is the From the center, the N. E. ¼ of a section is all the land center of the section, or lesser subdivision, sought to be divided. north of an east and west line, and east of a north and south line, through the center of a section. Viewing the N. E. ¼ from a standpoint of the center of a section, it is in fact northeast, and the N. W. ¼ is northwest, the S. W. ¼ southwest, and the S. E. ¼ southeast.

From what point of the triangle formed by dividing the section from the southeast to northwest corners, as contended by counsel, would the half section, which it is claimed would be the "N. E. ½," in fact, be northeast of? We say there is no point; neither is there any line or lines from which it would be north and east, or northeast. Standing in the center of a section thus divided, the half section in question would lie east, north, northeast, northwest, and southeast. Some of the land would be in the northwest part of the section, some in the northeast part, and some in the southeast part. If a person should begin at the southeast corner of a section so laid off, and walk entirely around it, there would be no possible point along the lines from which the half section would be northeast, or from which lines could be run inclosing it all to the north and the east.

The suggestion of error is *overruled*.